## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

STEVEN M. JOHNSON, #155-865,        \*

Plaintiff,        \*

v.        \*        Civil Action No. PX-18-1096

WEXFORD HEALTH SOURCES, INC.,    \*
DR. AVA JOUBERT,
TERRI DAVIS, P.A.,        \*
N.P. JANETTE CLARK,
DEPARTMENT OF CORRECTIONS,    \*
DAYENA M. CORCORAN,
SHARON BAUCOM,        \*

Defendants.[1]        \*

\*\*\*

## MEMORANDUM OPINION

Steven M. Johnson, an inmate presently incarcerated at Western Correctional Institution

("WCI") in Cumberland, Maryland, originally brought this action in the Baltimore City District

Court against Wexford Health Sources, Inc. ("Wexford"), Ava Joubert, M.D., Terri Davis, P.A.,

and Janette Clark, N.P (collectively, "Medical Defendants"). ECF No. 2. Johnson claimed that

the Medical Defendants have conspired to deny him medication and medical treatment. *Id.* On

April 16, 2018, the Medical Defendants removed the matter to this Court, where the Complaint

was construed as alleging violations of Johnson's civil rights, brought pursuant to 42 U.S.C. §

1983. ECF No. 1.

On May 17, 2018, the Medical Defendants moved to dismiss the claims or, alternatively

for summary judgment in their favor. (ECF No. 33). In light of the Medical Defendants'

dispositive motion, Johnson moved to amend his Complaint to add the Department of Corrections

---

[1] The Clerk shall amend the docket to reflect the correct names of Defendants Wexford Health
Sources, Inc. and Terri Davis, P.A.

("DPSCS"), former Commissioner of Corrections Dayena M. Corcoran, and DPSCS Medical Director Sharon Baucom (collectively, "Correctional Defendants") as Defendants. ECF No. 49. The Court granted Johnson's motion (ECF No. 52), and the Correctional Defendants moved to dismiss or for summary judgment in their favor. ECF No. 74. Johnson has responded and submitted several supplements to those responses.[2] ECF Nos. 74, 76, 79, 82. After review of the record, exhibits, and applicable law, the Court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018). Defendants' motions shall be granted.

## I.     Background

Johnson originally brought this action on December 28, 2017, alleging that the Medical Defendants conspired to deny him medication and treatment. ECF No. 2.[3] Based on his numerous filings, it appears that Johnson's chief complaint is the delay and lapse in his receipt of the medication Neurontin.

According to the Medical Defendants, Johnson, a 60-year-old inmate at WCI, suffers from significant and degenerative joint disease, temporomandibular joint disorder and shoulder arthropathy, idiopathic peripheral neuropathy, esophageal reflux, Diabetes Type II, rhinitis and

---

[2] Following the filing of the Medical Defendants' dispositive motion, Johnson attempted on three separate occasions to amend his Complaint, adding allegations concerning a different series of events. *See* ECF Nos. 69, 71, 72. The Court struck these amendments from the record, recognizing that "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party" and that "[a] proposed amendment is unduly prejudicial if it is belated and would change the nature of the litigation." ECF No. 88; *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603-04 (4th Cir. 2010) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (*en banc*)). The Court also directed Johnson not to file any additional motions without first receiving express permission from the Court because Johnson had inundated the Court with 20 motions of questionable merit in seven months. ECF No. 90. Johnson was cautioned that the Court will strike from the record any motion filed without advance permission. *Id.* Despite this warning, and after the Correctional Defendants' filed their dispositive motion, Johnson sought five amendments to the Complaint relating to a different series of events (ECF Nos. 86, 91, 92, 93, 98), as well as a Motion for Sanctions (ECF No. 94), Motion for Emergency Relief (ECF No. 95), and a Motion for Stop and Decease (sic) (ECF No. 97). Johnson failed to obtain the Court's permission for any of these filings. Accordingly, the amendments and motions will be stricken.

[3] All citations to filings refer to the pagination assigned by the Court's electronic docketing system.

hyperlipidemia, and a history for depressive disorder.  ECF No. 33-5 at ¶4.  While incarcerated, Johnson had been receiving Neurontin for diabetic neuropathy and neuropathic pain related to degenerative disc disease of the spine.  ECF Nos. 33-4, 33-5.  He also received steroid injections for his shoulder and joint disorder.  *Id.*

On August 29, 2017, Johnson saw Terri Davis, P.A. during a sick call visit for his chronic back pain.  ECF No. 33-4 at 3-4.  Johnson requested an increase in the dosage of Neurontin from his currently prescribed dosage of 800mg.  Johnson also complained the that prescribed Tylenol gets stuck in his esophagus.  *Id.*  Davis changed his Tylenol prescription to smaller capsules to be taken twice daily and continued the Neurontin prescription with no change in dosage.  *Id.*

On September 19, 2017, Johnson saw Peggy Mahler, N.P. at chronic care clinic.  *Id.* at 5-10.  Mahler noted that Johnson's polyneuropathy[4] has been treated and controlled, as reported by Johnson, by 800mg twice daily Neurontin and Tylenol.  *Id.*  Mahler renewed those prescriptions.  *Id.*  On October 12, 2017, Johnson again saw Mahler during a sick call visit for complaints of pain in his feet due to diabetic neuropathy.  *Id.* at 11-13.  Mahler advised Johnson to continue his medications and to follow up if the condition worsens or if there is no improvement within a few days.  *Id.*  On November 14, 2017, Dr. Joubert ordered a chest x-ray for Johnson due to reports of a persistent cough.  *Id.* at 14-15.  An x-ray performed on November 21, 2017, revealed no acute cardiopulmonary disease.  *Id.* at 16.

On December 22, 2017, Defendant Clark saw Johnson at the chronic care clinic.  *Id.* at 17-24.  At that time, Clark noted that Johnson had cervical and lumbar disc degeneration, a history of a left zygomatic arch fracture with plating, left arm dyesthesia, moderate degenerative joint

---

[4] Polyneuropathy is the simultaneous malfunction of many peripheral nerves throughout the body. *See* https://www.merckmanuals.com/home/brain,-spinal-cord,-and-nerve-disorders/peripheral-nerve-disorders/polyneuropathy (last visited Feb. 4, 2019).

disease, and multilevel mild scoliosis. *Id.* Clark ordered a tapering dose of Neurontin and offered alternative medication, which Johnson refused. *Id.*

Johnson initiated this lawsuit on December 28, 2017. On January 5, 2018, Johnson saw Krista Self, N.P. during a scheduled medical visit. *Id.* at 25-28. Self prescribed Tramadol 50mg twice daily for pain. *Id.* On January 7, 2018, Clark saw Johnson for his annual physical exam. *Id.* at 29-35. Johnson's exam was unremarkable except the nurse noted tenderness in the lumbar region of his spine. *Id.* Clark discontinued Johnson's prescription for Neurontin and prescribed Cymbalta[6] and Medrol[7] for pain. *Id.*

On February 2, 2018, Clark saw Johnson during a sick call visit following Johnson's complaints of persistent lower back pain radiating to his thighs. *Id.* at 36-39. Johnson reported that Neurontin was the only medication that alleviated his pain. *Id.* Johnson also reported that Cymbalta caused nausea, chest pain, numbness, and drowsiness; Elavil made him too sleepy; Tegretol made him sick to his stomach and did not improve pain; Medrol did not help pain; Mobic and Motrin induced allergic reactions, chest pain, and bloody stool; Baclofen gave him chest pain; and Effexor gave him chest pain and made him disoriented. *Id.* Johnson asked for a referral to a physician and indicated that he had filed a lawsuit against Clark. *Id.* Clark renewed Johnson's prescription for Tramadol and submitted a referral to a physician via telemedicine. *Id.*

On February 12, 2018, Mahler saw Johnson during a sick call visit following Johnson's complaints of back and shoulder pain. *Id.* at 41-42. Johnson stated that he was taking Tylenol

---

[6] Cymbalta (duloxetine) is a selective serotonin and norepinephrine reuptake inhibitor antidepressant that is used to treat major depressive disorder and fibromyalgia (a chronic pain disorder) or chronic muscle or joint pain (such as low back pain and osteoarthritis pain) in adults. *See* https://www.drugs.com/cymbalta.html (last visited Feb. 4, 2019).

[7] Medrol (methylprednisolone) is a steroid that prevents the release of substances in the body that cause inflammation. *See* https://www.drugs.com/mtm/medrol.html (last visited Feb. 4, 2019).

325mg and did not appear to be aware of his prescription for Tramadol. *Id.* Mahler advised Johnson to refrain from heavy lifting, to continue taking his medication, and to follow his exercise and stretching programs. *Id.*

On March 7, 2018, Clark confronted Johnson about his supposedly walking away with medications that were to be taken in front of the nurse. *Id.* at 43. Clark warned Johnson that any future similar reports would result in the discontinuation of Johnson's medications. *Id.* On March 16, 2018, Clark saw Johnson for a sick call visit. *Id.* at 44-46. Johnson again complained that his medication regimen did not alleviate his pain. *Id.* Although Johnson could perform activities of daily living, he could not bend to pick up things at work and found it difficult to exercise. *Id.* Clark directed Johnson to continue his current medication. *Id.*

On March 22, 2018, Asresahegn Getachew, M.D. conducted a chronic care telemedicine visit with Johnson. *Id.* at 47-52. Dr. Getachew noted Johnson's history of diabetes and chronic back pain, and that Johnson preferred Neurontin over Tramadol. *Id.* Dr. Getachew ordered a hip x-ray, approved a prescription for Neurontin for 120 days, and recommended tapering Tramadol over the course of one week. *Id.* A hip x-ray performed on March 26, 2018, read by a radiologist, did not show any evidence of acute fracture, dislocation or subluxation. *Id.* at 53.

On June 12, 2018, Johnson amended his Complaint to add the Correctional Defendants. ECF No. 49. After receiving the Medical Defendants' dispositive motion, Johnson believed that the Correctional Defendants may have decided to discontinue his Neurontin prescription. *Id.* at 1. Johnson claimed that he was denied Neurontin and was instead given "psychotic drugs like Elavil, Cymbalta, and Tramadol," all of which made him very sick. *Id.* at 1-2. He also claimed that until April 1, 2018, he was denied all pain medication except Tylenol. *Id.*

According to the Correctional Defendants, within the DPSCS system, Neurontin and

Tramadol have been identified by DPSCS's State Medical Director as medications vulnerable to overuse and abuse in a prison setting because of the drugs' narcotic, euphoric, and sedative like effects. *See* ECF No. 74 at 2-3 (quoting ECF 33-5 at ¶7). DPSCS further noted that Neurontin had been hoarded and traded between inmates for misuse in exchange for secondary benefits. *Id.* To address these issues with regard to Neurontin, DPSCS has sought to eliminate its use for non-FDA approved conditions barring exceptional circumstances. *Id.*

On August 2, 2018, Johnson added complaint allegations that the Medical Defendants refused to schedule him for an appointment with a medical provider so that he may renew his prescriptions. ECF No. 63-1. Johnson further asserted the Medical Defendants failed to fulfill their contract by not filling prescriptions or providing needed treatment for months at a time. *Id.*; *see also* ECF Nos. 76, 82. According to the Medical Defendants, however, Johnson continues to be monitored regularly by medical personnel for his chronic conditions and has access to immediate medical care through the sick call process. *See* ECF No. 33-5 at ¶14.

## II.    Standard of Review

Where, as here, the parties submit evidence beyond the four corners of the Complaint that the Court considers, the Court will treat the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" for the nonmoving party means that the nonmoving party must be aware that the court may treat the motion as one for summary judgment and the nonmoving party "must "be afforded a reasonable opportunity for discovery" if necessary to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). To do so, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for

specified reasons, it cannot present facts essential to justify its opposition" without formal discovery, or otherwise put the district court on notice of the reasons why summary judgment is premature. Fed. R. Civ. P. 56(d). *See also Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002).

The Court treats this motion as one for summary judgment. Johnson knew from the motion itself that Defendants are pursuing summary judgment. Moreover, Johnson has not sought additional discovery under Rule 56(d) or otherwise asked to take formal discovery prior to resolution, and the record evidence submitted appears to include Johnson's prison medical records related to this action. Construing the motion as seeking summary judgment is therefore appropriate.

Summary judgment shall be granted if the moving party demonstrates that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F. 3d 514, 522 (4th Cir. 2003). The nonmoving party bears the burden of showing the existence of a genuinely disputed material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

The Court reads Johnson's pleadings generously, as he proceeds pro se. *See Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007).  That said, the Court must also fulfill its "affirmative obligation .

. . to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346

F. 3d at 526 (internal quotation marks omitted).

III.     **Analysis**

A.  **Correctional Defendants**

The Correctional Defendants argue that as agents of the state, they are immune from suit

pursuant to the Eleventh Amendment to the United States Constitution. Under the Eleventh

Amendment, a state, its agencies and departments are immune from citizen suits in federal court

absent state consent or Congressional action.  *See Pennhurst State Sch. and Hosp. v. Halderman*,

465 U.S. 89, 100 (1984).  Claims against state employees acting in their official capacities are also

subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a

suit against the state itself.  *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  The State of Maryland

has not waived such immunity for claims brought pursuant to § 1983.  Accordingly, DPSCS as

well as Defendants Corcoran and Baucom are immune from suit for actions taken in their official

capacities.

To the extent Johnson intends to sue Corcoran and Baucom in their individual capacities,

no evidence exists that either Defendant took any action against Johnson.  Nor can they be held

liable as supervisors because the doctrine of respondeat superior does not apply to § 1983 claims,

*Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).  *See also Love-Lane v. Martin*, 355 F.3d 766,

782 (4th Cir. 2004).  At best, the Complaint and evidence establish that DPSCS has policies in

place to prevent the overuse and abuse of certain medications, including Neurontin.  *See* ECF No.

74 at 2-3 (quoting ECF 33-5 at ¶7).  Adhering to this policy does not amount to participation in

the alleged constitutional violation sufficient to confer liability.   Moreover, no evidence

demonstrates that the Correctional Defendants are liable pursuant to *Monell v. Dep't of Soc. Servs. of the City of New York*, for unconstitutional actions taken pursuant to an official policy, custom, or practice. 436 U.S. 658, 690-91 (1978). Accordingly, viewing the facts as pleaded most favorably to Johnson, summary judgment is granted in favor of Corcoran and Baucom.

## II.    Medical Defendants

Johnson's claims all sound in deprivation of his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution. Assuming that Wexford is a state actor for § 1983 purposes, it cannot be liable solely on the theory of respondeat superior. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009). Rather, Johnson must plausibly aver that Wexford deprived him of some federal constitutional or statutory right by virtue of implementing an unconstitutional policy, practice, or custom. *See Monell*, 436 U.S. at 690. The allegations here fall far short of this requirement. Accordingly, the claims against Wexford must be dismissed. *See Love-Lane*, 355 F.3d at 782.

The Eighth Amendment claims as to the remaining Medical Defendants, viewing the facts most favorably to Johnson, also fail. To sustain an Eighth Amendment claim based on denial of medical care, a plaintiff must demonstrate that Defendants' acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (citations omitted). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844. "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citation and internal quotation marks omitted).

Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Further, the right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added).

Johnson's claim centers on the delay or lapse in his receipt of prescriptions for Neurontin. He states that he was instead given "psychotic drugs like Elavil, Cymbalta, and Tramadol," all of which made him ill. Based on the record, it appears that Johnson received Neurontin from August through December 2017. Although Johnson did not receive Neurontin from January 7, 2018 until March 22, 2018, a two-month lapse in Neurontin on this record does not constitute a serious or significant injury. "[D]elay in providing treatment does not violate the Eighth Amendment where the seriousness of the injury is not apparent." *Brown v. Comm'r of Cecil Cty. Jail*, 501 F. Supp. 1124, 1126 (D. Md. 1980). Indeed, the record, viewed most favorably to Johnson, does not demonstrate that he suffered unnecessary pain as a result of any lapse or delay. Rather, according to his medical chart, Johnson continued to receive other pain medication such as Tylenol and Tramadol, enabling him to perform activities of daily living. A hip x-ray performed on March 26, 2018, revealed no evidence of an acute fracture, dislocation or subluxation; therefore, it required no treatment.

Moreover, subjectively, the lapse in Neurontin did not amount to an act or omission "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Johnson has marshalled no evidence that the Medical Defendants exhibited a callous disregard for a serious medical need. *See Estelle*, 429 U.S. at 105-06. Rather, from August 29, 2017 to March 26, 2018, Johnson was seen in the medical unit 13 times for chronic care appointments, sick call visits, and x-rays. According to Dr. Getachew, Defendant Clark conformed to correct protocol when she discontinued Johnson's Neurontin consistent with DPSCS directives in January 2018 and offered medically appropriate substitute treatment. Clark also promptly referred Johnson to Dr. Getachew, who reinstated Johnson's Neurontin prescription. On these facts, viewed most favorably to Johnson, he cannot demonstrate that any delay in receiving

11

Neurontin was the product of the Medical Defendants' callous disregard for a serious medical need. Summary judgment is granted in the Medical Defendants' favor.

To the extent that Johnson asks this Court to order that Defendants provide him with Neurontin, he seeks injunctive relief. A preliminary injunction is an "extraordinary and drastic remedy." *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate that: 1) he is likely to succeed on the merits; 2) he will likely suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010) (*per curiam*). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)).

Johnson fails to demonstrate that he is likely to succeed on the merits or that he is likely to suffer irreparable harm absent preliminary injunctive relief from this Court. The verified medical records and the medical providers' declarations demonstrate that Johnson has continuously received medical attention for his complaints, even if not precisely according to his preferences. Accordingly, and as discussed above, Johnson cannot succeed on the merits of his claim. Further, the record does not demonstrate that Neurontin is necessary to avoid irreparable harm. Johnson's requested injunction must therefore be denied.

## IV.  Conclusion

For the above-stated reasons, Defendants DPSCS and Wexford are dismissed from suit.

Summary judgment is granted in favor of Defendants Corcoran, Baucom, Dr. Joubert, Davis, and

Clark.  A separate Order follows.


|           2/8/19           |                |                /S/                |
| Date |  | Paula Xinis |
|  |  | United States District Judge |